## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**COSME SANCHEZ RAMIREZ,**

        **Plaintiff,**

**v.**
                                **CIVIL ACTION NO. 5:09-CV-92**
                                **(Judge Stamp)**

**DR. MACE,** *et al.,*

        **Defendants.**

## REPORT AND RECOMMENDATION

### I. Factual and Procedural History

The *pro se* plaintiff initiated this civil rights action on July 15, 2009. In the complaint, the plaintiff alleged violations of his constitutional rights against Dr. Ellen Mace-Leibson, Clinical Director of the Federal Correction Institution in Gilmer, West Virginia (hereinafter "FCI Gilmer"), and Kuma Deboo, Warden of FCI Gilmer pursuant to Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

On January 4, 2010, the undersigned conducted a preliminary review of the file and determined that immediate dismissal of the plaintiff's claim against Dr. Mace-Leibson and Kuma Deboo was not appropriate. Accordingly, an order to answer was entered.

On March 25, 2010, after service of the summons and complaint, defendants Dr. Mace-Leibson and Deboo filed a Motion to Dismiss, or Alternatively, Motion for Summary Judgment based on the plaintiff's alleged failure to fully exhaust administrative remedies.

### II. Contentions of the Parties

### A. __The Complaint__

In the complaint, the plaintiff asserts that Dr. Mace-Leibson and Deboo denied him a soft diet despite the fact he cannot chew because he has no upper teeth.  In addition, he alleges that the defendants denied him medication for stomach pains, and instead, directed him to purchase medication from the commissary.  However, because he is allegedly indigent, the plaintiff maintains that he could not purchase the medication.

### B. __The Defendant's Motion__

In response to the complaint, the defendants assert that the plaintiff is not entitled to relief for the following reasons:

(1)  the plaintiff failed to fully exhaust his administrative remedies;

(2)  the plaintiff cannot establish a claim for deliberate indifference to his medical condition;

(3)  the plaintiff has failed to establish a claim for supervisor liability and;

(4)  the defendants are entitled to qualified immunity.

### C. __The Plaintiff's Response__

In response to the defendants' motions, the plaintiff simply reiterates his claim that he was denied a soft diet treatment and had to eat all kinds of food to survive.  Consequently, the plaintiff claims that his upper gum was bruised severely and continues to cause him pain.

## III. __Medical History__

When the plaintiff arrived at FCI Gilmer is April of 2008, he was on Ranitidine, the generic form of Zantac, for acid reflux. The plaintiff was also on other medication including psychiatric medications.  During his confinement at FCI Gilmer, the plaintiff was treated for his medical

conditions, including chronic prostatitis, chronic obstructive asthma, coronary atherosclerosis of native coronary artery, esophageal reflux, and hyperlipidemia. (Dckt.. 37-3, p. 1).

On January 12, 2009, during a routine visit to the Chronic Care Clinic ("CCC")[1], the plaintiff advised Dr. Mace-Liebson that he had stopped taking Ranitidine because it was not helping. Dr. Mace Liebson discontinued the prescription for Ranitidine and prescribed Omeprazole, a medication also used to treat reflux, gastritis, and abdominal pain caused by those conditions. Dr. Mace-Liebson examined the plaintiff again on February 27, 2009. At that time, she discontinued Omeprazole because the plaintiff indicated that it did not help. She also instructed the plaintiff to self-select bland foods from the main menu because it was not medically necessary to place the plaintiff on a special diet. (Dckt. 37-3, p. 2).

On March 10, 2009, the plaintiff was seen by a nurse practitioner and complained of stomach pains. The nurse practitioner prescribed Ranitidine and Metoclopramide, another medication for reflux. (Dckt. 37-3, p. 2). However, on March 11, 2009, the pharmacist recommended that the plaintiff not be prescribed Ranitidine. In making this recommendation, the pharmacist reviewed the medical notes, the plaintiff's commissary purchases, and the protocol for the prescription. The pharmacist noted that the plaintiff had been purchasing gastrointestinal irritants from the commissary including sardines in hot sauce, chile ramen, and coffee. Based on the medical record, the commissary purchases, and the availability of the medication in the commissary, the pharmacist noted that the plaintiff did not meet the protocol for being prescribed Ranitidine at that time.

---

[1]CCC is a method used by the Bureau of Prisons to manage the health care of inmates with chronic health conditions on a regular basis. Inmates enrolled in the CCC program are seen by staff physicians and other medical staff for monitoring of their health conditions on a routine basis. The CCC is in addition to normal sick call treatment and emergency care. (Dckt. 37-3, p. 1).

Accordingly, the pharmacist referred the plaintiff to the commissary to purchase Ranitidine. In addition, the pharmacist did not recommend Metoclopramide be prescribed for the plaintiff because it is not recommended for patients with schizophrenia. (Dckt. 37-3, pp. 3-4).

On April 27, 2009, the plaintiff reported to sick call and requested to be placed back on medication for acid reflux. Dr. Mace-Liebson instructed the nurse to refer him to the commissary to purchase the medication. (Dckt.. 37-3, p.4).

In addition to his case in the CCC, the plaintiff was seen by dental staff on several occasions in regard to his complaints about his missing teeth. Specifically, on March 3, 2009, the plaintiff was examined by a dentist, at which time he requested upper dentures. However, the dentist discovered 4 cavities on the plaintiff's lower teeth and explained that the cavities would need to be fixed before dentures could be made. Plaintiff refused to have the cavities fixed and refused to sign the refusal for medical treatment form. Consequently, the cavities were not filled and the evaluation for dentures could not proceed. (Dkt. No. 37-3 at 3, 37-4).

## IV. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

B. **Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but … must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is properly only "[w]here the record taken as a whole could not lead a rational trier of fact to find the nonmoving party." Matsushita at 587 (citation omitted).

## V. **Analysis**

6

**A. Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added). Moreover, an inmate may procedurally default his claims by failing to follow the proper procedures. See Woodford v. Ngo., 548 U.S. 81, 126 S. Ct. 2378 (2006) (recognizing the PLRA provisions contain a procedural default component).

The Federal Bureau of Prison ("BOP") has established an administrative remedy procedure through which an inmate may seek a formal review of an issue or complaint relating to his confinement. Within 20 calendar days of the date of the occurrence on which the complaint is based, an inmate may file a written complaint with the institution on the proper form. See 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the institutional Warden's response, he may appeal, to the Regional Director within 20 calendar days of the Warden's response. See 28 C.F.R. § 542.15(a). If the inmate is still not satisfied, he may appeal the Regional Director's response to the Office of General Counsel via a Central Office Administrative Remedy Appeal. The final appeal

must be filed within 30 calendar days of the date the Regional Director signed the response. Id. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

A review of the plaintiff's administrative history in SENTRY reveals he has not exhausted administrative remedies regarding his current complaints. The plaintiff has fully exhausted only one administrative remedy, which was a request he made for dentures. (Dkt. No. 37-1, 37-2). The plaintiff filed Remedy ID No. 505987-F1 at the institutional level on August 27, 2008 wherein he requested dentures because he lacked upper teeth which affected his diet and health. The remedy was denied at the institutional level on September 17, 2008, wherein it was explained that he was on a waiting list to be evaluated for dentures by a dentist, who would determine the necessity of dentures. (Dkt. No. 37-1 at 2, 37-2).

On October 27, 2008, the plaintiff appealed the denial. In its response, the Regional Office denied his appeal and explained the qualifications for dentures and also informed that he was on the waiting list for evaluation. The plaintiff appealed the regional denial to the Central Office on February 3, 2009 and was denied on March, 2009, informed again that he was on a waiting list for evaluation. (Dkt. No. 37-1 at 2, 37-2 at 44).

The plaintiff filed two additional grievances which are related to this case, but failed to fully exhaust the remedies. The plaintiff filed Remedy ID No. 528155-F1 at the institutional level on February 26, 2009 regarding stomach pains for which he had and requested a microscopy. He received a response stating he was seen by medical staff on February 27, 2009, blood tests were ordered, and he was advised to self-select bland foods from the menu. The plaintiff did not appeal this response and is procedurally barred from exhausting this remedy now because he failed to file

the appeal with the Regional Office within 20 days of the date the Warden signed the response. (Dkt Nos. 37-1 at 2, 37-2 at 46, 52).

On May 11, 2009, the plaintiff filed Remedy ID No. 538220-F1 at the institutional level complaining that he continued to have stomach problems. Dr. Mace-Leibson advised the plaintiff to buy a prescription from the commissary. The plaintiff stated when he arrived at FCI Gilmer, he had a prescription for his stomach and he wanted the prescription to be refilled. The Warden denied his remedy and explained that he did not meet the criteria for a prescription and would need to purchase the medication from the commissary. The plaintiff did not appeal this response and is procedurally barred from exhausting this remedy now because he again failed to file an appeal with the Regional Office within 20 days of the date the Warden signed the response. (Dkt. No. 37-1 at 2, 37-2 at 46, 54).

Thus, the plaintiff's claims should be dismissed with prejudice for failing to exhaust administrative remedies. However, even if the plaintiff had exhausted administrative remedies, his complaint should be dismissed for failure to state a claim upon which relief can be granted.

B. **Deliberate Indifference**

To establish an actionable Eighth Amendment claim for inadequate medical care, a claimant must demonstrate the defendants were deliberately indifferent to his medical needs. Wilson v. Seiter, 501 U.S. 294, 297 (1991). A prisoner must prove two elements: (1) that, objectively, the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). When dealing with claims of inadequate medical attention, the objective component is satisfied by a serious medical condition.

9

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth 834 F.2d at 347. Thus, while failure to provide recommended elective knee surgery does not violate the Eighth Amendment, Green v. Manning, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth Amendment. Derrickson v. Keve, 390 F.Supp. 905,907 (D.Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery. West v. Keve, 541 F. Supp. 534 (D. Del. 1982) (Court found that unreasonable delay occurred when surgery was recommended in October 1974, but did not occur until March 11, 1996.)

Here, even if the court determined that the plaintiff's lack of teeth and his stomach ailment are serious medical conditions, thus satisfying the first element of an Eighth Amendment claim, the medical records cited above clearly establish that the plaintiff received adequate medical supervision at FCI Gilmer for these conditions, and he cannot demonstrate that his medical needs were not timely or properly treated.

Moreover, the Fourth Circuit Court of Appeals has held that:

Court will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment....[which] remains a question of sound professional judgment.

10

Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977).

Here, at best, the plaintiff's challenge to Dr. Mace-Liebsen's medical care is a challenge to her determination that a special diet was not medically necessary and that medication available in the commissary was appropriate to treat his reflux. Aside from his bald assertion, the plaintiff has provided nothing which would provide this court with a basis to second-guess the care the plaintiff received.

Finally, it is abundantly clear that the plaintiff was non-compliant with medical staff. Instead of purchasing medication from the commissary as directed, on April 2, 2009, the plaintiff purchased beef sausage, chili ramen, coffee, honey buns, ramen beef, Reese Cups, snack crackers, Snickers, and numerous other items, spending a total of $72.95. On April 9, 2009, he purchased chicken ramen, chili ramen, coffee, and snack crackers. On April 16, 2009, the plaintiff again purchased coffee. Finally, on May 15, 2009, the plaintiff purchased honey buns, nutty bars, snack crackers, and turkey sticks. (Dckt. 37-2). Accordingly, not only did the plaintiff fail to purchase the medication, but he continued to purchase items that were gastrointestinal irritants. Accordingly, the sum of the record clearly establishes that the plaintiff's complaint fails to establish an Eighth Amendment claim for deliberate indifference.

## C. **Supervisor Liability Inapplicable in a *Bivens* Action**

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.2d 391, 402 (4th Cir. 2001)(internal citation omitted). Thus, in order to establish liability in a Bivens case, a plaint must specify the acts taken by the defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663 (3rd Cir. 1988). Some sort of personal involvement on the part

of the defendant and a causal connection to the harm alleged must be shown.  See Zeitler v. Wainwright, 802 F.2d 391, 401 (11th Cir. 1986).  *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case.  Rizzo v. Good, 423 U.S. 362 (1976).

Here, the plaintiff does not allege any personal involvement on the part of Warden Deboo. Instead, it appears that the plaintiff has named her as defendant only in her official capacity as the Warden of FCI Gilmer.  However, a suit against government agents acting in their official capacities is considered a suit against the United States itself.  See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits...'generally present only another way of pleading an action against an entity of which an officer is an agent.'").

Nonetheless, in Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in a Bivens action if the plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations."  In so finding the Court recognized that [s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury."  Id.  However, a plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. Id.  Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. Id.

In this case, the plaintiff has not provided any evidence that Warden Deboo tacitly authorized or was deliberately indifferent to an alleged violation of his constitutional rights.  Moreover,

12

to the extent that the plaintiff may be asserting that the Warden was deliberately indifferent to his needs by denying his administrative grievances, that claim is also without merit because that is not the type of personal involvement required to state a <u>Bivens</u> claim.  <u>See</u> <u>Paige v. Kuprec</u>, 2003 W.L. 23274357 *1 (D.Md. March 31, 2003).  Accordingly, Warden DeBoo must be dismissed as a defendant in this action.

Similarly, if the Court were to construe this complaint as including an allegation that the plaintiff was denied dentures, Dr. Mace-Leibson was not the medical provider who made that determination.  Instead, it was made by the dentist.  (Dkt. No. 37-1).  Since Dr. Mace-Leibson did not make the determination of whether dentures would be provided, she cannot be held responsible under any theory of supervisory liability.

## V. <u>Recommendation</u>

For the reasons stated herein, the undersigned recommends that the defendants' Motion to Dismiss, or Alternatively, Motion for Summary Judgment (Dkt. No. 35) be **GRANTED** and the complaint be **DISMISSED with prejudice**.

Within fourteen (14) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are  made, and the basis for such objections.  A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge.  Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984)

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. In addition, the Clerk is directed to provide a copy to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: June 1, 2010

                                              /s/ James E. Seibert
                                              JAMES E. SEIBERT
                                              UNITED STATES MAGISTRATE JUDGE